# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CALEB CHARLESTON, #M34856, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>WARDEN JONES, )<br>J. SCHOENVECK, )<br>C/O WESTERMAN, )<br>C/O WOOLEY, )<br>C/O MCCALEB, )<br>C/O CARON, )<br>C/O GARDNER, )<br>SHAUN GEE, )<br>HEATHER MCGEE, )<br>JOHN DOE 1, )<br>JOHN DOE 2, )<br>JOHN DOE 3, )<br>JOHN DOE 4, )<br>JOHN DOE 5, )<br>JOHN DOE 6, )<br>JOHN DOE 7, )<br>JOHN DOE 8, )<br>JOHN DOE 9, )<br>JOHN DOE 10, )<br>JOHN DOE 11, )<br>JOHN DOE 12, and )<br>WEXFORD HEALTH SOURCE, INC., )<br>)<br>Defendants. ) | Case No. 19−cv−00764−SMY |

## MEMORANDUM AND ORDER

**PHILIP G. REINHARD, United States District Court Judge:**[1]

    Plaintiff Caleb Charleston, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Illinois River Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while he was in custody at Menard Correctional Center ("Menard"). Plaintiff alleges he was attacked by other

---

[1] Sitting by designation pursuant to 28 U.S.C. § 294(c) and Administrative Order No. 248 of the United States District Court for the Southern District of Illinois.

1

inmates after notifying corrections officers that he was in danger and then received inadequate medical care following the attack. He requests money damages.

This case is now before the court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## **The Complaint**

Plaintiff makes the following allegations in the complaint: On September 6, 2017, after not being searched or shook down by John Doe correction officers 1, 2, 3, 4, 5, and 6, plaintiff and other inmates from 7 gallery went to the yard. ([1], p. 17). While in the yard, other inmates started to threaten plaintiff with physical violence if he did not leave the yard. He went to John Doe correction officers 7, 8, 9, and 10 for help and told them that other inmates had shanks and were threatening to attack him and asked to leave the yard. The officers laughed at plaintiff and taunted him with racial and homosexual slurs. *Id.* at p. 18. John Doe 7 told plaintiff to get away from the gate. After returning to the yard, plaintiff was attacked by multiple inmates, who kicked, punched, and stabbed him. Plaintiff states that various officers and warden Jones all watched from behind the gate as he and four other inmates were stabbed. *Id.* at p. 19.

Following the incident, while waiting to be handcuffed and escorted from the yard, plaintiff told warden Jones, correction officer Westerman, and lieutenant Schoenveck that he had been stabbed in his right arm and could not move it. *Id.* at pp. 19, 29. Warden Jones instructed Westerman to cuff him extra tight. Using excessive force, Westerman forced plaintiff's injured arm behind his back causing additional pain to his arm, hands, and wrists.

At the health care unit, plaintiff was treated by nurse McGee who cleaned and put a small bandage on his stab wound. *Id.* Even with the bandage, his arm continued to bleed. She said that there was nothing more she could do for him and denied him medicine for the pain. He then told correction officer Wooley, who was in the room with him, that he was in extreme pain and that his arm was still bleeding. Wooley stated that it was not her job to get plaintiff adequate medical treatment, and that she was only there to take pictures of the injuries and bloody clothes. *Id.* at p. 20. Plaintiff left health care with his arm still bleeding, still in pain, and was never seen by a doctor.

For the next week plaintiff's arm continued to bleed and he was in extreme pain. At various times he asked several officers and staff, including correction officers Gardner, Wooley, Gee, John Doe 12, McCaleb, and Caron, and mental health staff member Jane Doe 11, for additional medical attention, but was denied. *Id.* at pp. 20-21.

Based on the allegations in the complaint, the court finds it convenient to delineate the claims in this case into the following counts (claims):

| | |
|---|---|
| **Count 1:** | Eighth Amendment failure to protect claim against Jones and John Doe correction officers 1-10. |
| **Count 2:** | Eighth Amendment excessive force claim against Jones, Schoenveck, and Westerman for handcuffing plaintiff after he received injuries to his arm. |
| **Count 3:** | Eighth Amendment deliberate indifference to a serious medical need claim against Jones, Westerman, Schoenveck, John Does 11 and 12, Wooley, McCaleb, Caron, Gardner, Gee and McGee for failing to provide plaintiff with adequate medical treatment following his attack. |

The parties and the court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this court. **Any claim that is mentioned in the complaint but not addressed in this order is considered dismissed without prejudice as inadequately pled under *Twombly*.**[2]

## Preliminary Dismissals

Plaintiff has listed Wexford Health Source, Inc. ("Wexford"), as a defendant in the case caption, but he does not describe how Wexford has violated his constitutional rights. To state a claim against Wexford, plaintiff must demonstrate that the alleged wrongdoers acted pursuant to an unconstitutional policy or custom attributable to Wexford. *See Jackson v. Ill. Medi–Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002); *Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir.2002). Here, not only has plaintiff not alleged any policy or custom attributable to Wexford, but he has not referenced Wexford in the statement of claim at all. Federal Rule of Civil Procedure 8(a)(2) requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Merely invoking the name of a potential defendant by listing him or her in the case caption is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Therefore, because plaintiff has failed to allege any claims against Wexford, Wexford is dismissed without prejudice.

## Discussion

### Count 1

To succeed on a failure-to-protect claim, an inmate must first demonstrate, objectively, that he is "incarcerated under conditions posing a substantial risk of serious harm[,]" *Farmer v. Brennan,* 511 U.S. 825, 834 (1994), and a beating of one inmate by another "clearly constitutes serious harm." *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). Second, he must show that prison

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

officials acted with deliberate indifference to that risk, a subjective inquiry into a prison official's state of mind. *Farmer*, 511 U.S. at 838–39. As explained in *Farmer*, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prisoner must demonstrate that prison officials were aware of a specific, impending and substantial threat to his safety, often "by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (quoting *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991)).

A showing of negligence, or even gross negligence, is insufficient to prove an official acted with deliberate indifference. The standard is the "equivalent of criminal recklessness." *Grieveson v. Anderson,* 538 F.3d 763, 777 (7th Cir. 2008) (quoting *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006)).

At this stage of the process, plaintiff has pled sufficient facts to state a claim against John Does 7, 8, 9, and 10 for failing to protect him from a known, specific threat of assault after he notified them of the threat and requested to be removed from the yard. Additionally, a plausible failure to protect claim is stated against warden Jones, who allegedly watched while plaintiff was attacked and failed to intervene.

Plaintiff's claim fails, however, against John Does 1, 2, 3, 4, 5, and 6. Plaintiff only claims that these defendants failed to search inmates prior to going out to the yard and has not alleged that they knew there was a specific threat to his safety and failed to take action. *See Sanville v. McCaughtry,* 266 F.3d 724, 733-34 (7th Cir. 2001). Therefore, Count 1 will proceed against John Does 7-10 and warden Jones, but will be dismissed without prejudice against John Does 1-6.

**Count 2**

A prison official inflicts cruel and unusual punishment on an inmate, in violation of the Eighth Amendment, when the official intentionally uses excessive force against the inmate without penological justification. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hudson v. McMillian*, 503 U.S. 1 (1992). In order to prevail on an excessive force claim, an inmate must demonstrate that the force used by the defendant was not applied in a good-faith effort to maintain or restore discipline, but, rather, was applied maliciously and sadistically to cause harm. *See Hudson*, 503 U.S. at 7. However, not every malicious touch by a prison official gives rise to a cause of action under the Constitution. Unless the physical force is "repugnant to the conscience of mankind", force that is *de minimis* is not actionable. *Id*. at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)) (internal quotations omitted).

Plaintiff alleges that Jones, Schoenveck, and Westerman applied excessively tight handcuffs to him and twisted his arm, even after he told them his arm was injured and that he could not move it. His arm then continued to bleed through the week and he experienced numbness, swelling, extreme pain, limited mobility, and discoloration. (Doc. [1-1], p. 16). Because security measures as ordinary as handcuffs can still be used in ways that violate the constitution, Count 2

survives screening. *See Hope v. Pelzer,* 536 U.S. 730, 738 (2002) (holding that prisoner's allegations, including that he suffered unnecessary pain while handcuffed for seven hours, were sufficient to state Eighth Amendment violation).

### Count 3

The Eighth Amendment prohibits cruel and unusual punishment of inmates and imposes an obligation upon prison officials to provide them with adequate medical care for serious medical conditions. *Arnett v. Webster,* 658 F.3d 742, 750 (7th Cir. 2011). A condition is considered sufficiently serious if failure to treat it could result in the unnecessary and wanton infliction of pain. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "[A] prisoner claiming deliberate indifference need not prove that the prison officials intended, hoped for, or desired the harm that transpired." *Haley v. Gross,* 86 F.3d 630, 641 (7th Cir. 1996). It is enough to show the defendants actually knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk. *Id.* (citing *Farmer*).

Plaintiff alleges that during the attack he was stabbed in the arm and that his arm continued to bleed for over a week. Despite continually asking defendants for medical care and informing them about his injury, he was repeatedly denied or ignored. At this juncture plaintiff has alleged sufficient facts to proceed on Count 3.

### Motion to Appoint Counsel

Plaintiff has also filed a Motion for Recruitment of Counsel ([3]). There is no constitutional or statutory right to appointment of counsel in federal civil cases. *Romanelli v. Suliene,* 615 F.3d 847, 851 (7th Cir. 2010). Federal district courts have discretion under 28 U.S.C. § 1915(e)(1) to request counsel to assist *pro se* litigants. *Id.* When presented with a request to appoint counsel, the court must consider: "(1) has the indigent plaintiff made reasonable efforts to retain counsel or been effectively precluded from making such efforts, [and] (2) given the difficulty of the case, did the plaintiff appear competent to try it himself." *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (citations omitted).

With regard to the first step of the inquiry, plaintiff has not provided the court with any information regarding his attempts to obtain counsel. For this reason, plaintiff's motion is **DENIED** without prejudice. The court encourages plaintiff to renew his request for the appointment of counsel at a later date. If plaintiff does renew his request, he should give the court rejection letters from at least three lawyers to prove that he has recently made reasonable efforts to find a lawyer on his own.

### Motion for Service of Process

Because plaintiff has been granted pauper status ([6]) and the court is obligated to arrange service for incarcerated persons proceeding *in forma pauperis*, his Motion for Service of Process at Government Expense ([4]) is **DENIED** as moot.

## Identification of Unknown Defendants

As previously noted, plaintiff will be allowed to proceed with Count 1 against John Does 7-10 and Count 3 against John Does 11 and 12. However, these defendants must be identified with particularity before service of the complaint can be made on them. Plaintiff will have the opportunity to engage in limited discovery to ascertain their identity. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In that vein, the Clerk of Court will be directed to add the current acting warden of Menard Correctional Center, Frank Lawrence (official capacity only), as a party to this action. The warden shall be responsible for responding to discovery aimed at identifying these unknown defendants. Once the names of these individuals are discovered, plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the complaint.

## Disposition

The Clerk of Court is **DIRECTED** to add Frank Lawrence, warden of Menard (official capacity only), as a defendant in this action. Wexford Health Sources, Inc**.** is **DISMISSED** without prejudice and the Clerk of Court is **DIRECTED** to terminate Wexford Health Source, Inc. as a defendant in the Case Management/Electronic Case Filing ("CM/ECF") system.

**IT IS HEREBY ORDERED** that the Motion for Recruitment of Counsel ([3]) is **DENIED without prejudice** and Motion for Service of Process at Government Expense ([4]) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that **COUNT 1** shall proceed against John Does 7-10 and Jones, but is **DISMISSED** as to John Does 1-6. Because there are no other claims against John Does 1-6, the Clerk of Court is **DIRECTED** to terminate them in the Case Management/ Electronic Case Filing ("CM/ECF") system.

**IT IS FURTHER ORDERED** that **COUNT 2** shall proceed against Jones, Schoenveck, and Westerman, and **COUNT 3** shall proceed against Jones, Westerman, Schoenveck, John Does 11 and 12, Wooley, McCaleb, Caron, Gardner, Gee, and McGee.

**IT IS FURTHER ORDERED** the Clerk of Court shall prepare for **Jones, Schoenveck, Westerman, Wooley McCaleb Caron, Gardner, Gee, McGee,** and **Lawrence** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk of Court is **DIRECTED** to mail these forms, a copy of the complaint, and this memorandum and order to each defendant's place of employment as identified by plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk of Court within 30 days from the date the forms were sent, the Clerk of Court shall take appropriate steps to effect formal service on that defendant, and the court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant cannot be found at the work address provided by plaintiff, the employer shall furnish the Clerk of Court with the defendant's current work address, or, if not known, the

defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk of Court. Address information shall not be maintained in the court file or disclosed by the Clerk of Court.

Service shall not be made on unknown defendants **John Does 7-12**, until such time as plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the court with the name and service address for each John Doe defendant.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, defendants need only respond to the issues stated in this merit review order.**

This entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

**IT IS ALSO ORDERED** that if judgment is rendered against plaintiff, and the judgment includes the payment of costs under § 1915, plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
**DATED: 10/02/2019**

*Philip G. Reinhard*
_____
**PHILIP G. REINHARD**
**United States District Judge**

## Notice to Plaintiff

The court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an answer to your complaint. It will likely take at least **60 days** from the date of this order to receive the defendants' answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed answers, the court will enter a scheduling order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the court at this time, unless specifically directed to do so.**