IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CALEB CHARLESTON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-cv-764-DWD |
| | ) |
| **ALEX JONES,** | ) |
| **JOSHUA SCHOENBECK,** | ) |
| **PAMELA WESTERMAN,** | ) |
| **SARAH WOOLEY,** | ) |
| **JOHN MCCALEB,** | ) |
| **CHASE CARON,** | ) |
| **JEFFREY GARDINER,** | ) |
| **SHAUN GEE,** | ) |
| **HEATHER MCGHEE,** | ) |
| **PATRICK TROKEY,** | ) |
| **CALE YOUNG,** | ) |
| **JORDAN REES, and** | ) |
| **TANGELA OLIVER,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Caleb Charleston, an inmate of the Illinois Department of Corrections ("IDOC"), brings this 42 U.S.C. § 1983 action against Defendants following injuries Plaintiff sustained at Menard Correctional Center ("Menard") in 2017. As narrowed by the Court's threshold order (Doc. 10), Plaintiff proceeds on the following counts:

**Count 1:** Eighth Amendment failure to protect claim against Jones and correction officers Trokey, Young, and Rees.

**Count 2:** Eighth Amendment excessive force claim against Jones, Schoenbeck, and Westerman for handcuffing plaintiff after he received injuries to his arm.

1

**Count 3:** Eighth Amendment deliberate indifference to a serious medical need claim against Jones, Westerman, Schoenbeck, Oliver Wooley, McCaleb, Caron, Gardiner, Gee and McGhee for failing to provide plaintiff with adequate medical treatment following his attack.

Now before the Court is the Motion for Summary Judgment (Doc. 54) on the issue of failure to exhaust administrative remedies, and memorandum in support (Doc. 55) filed by Defendants Caron, Gardiner, Gee, Jones, McCaleb, McGhee, Rees, Schoenbeck, Trokey, Westerman, Wooley, and Young. Defendant Oliver did not participate in the Motion. Plaintiff filed a response opposing the Motion (Doc. 58). For the reasons set forth below, Defendants' Motion for Summary Judgment (Doc. 54) will be **DENIED, in part, only as to Count 3 of Plaintiff's Complaint**. Defendants' Motion is taken under further advisement as to Counts 1 and 2. A motion hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) will be set by further court order. The Parties are advised that the hearing will be limited solely to the issue of exhaustion as to Counts 1 and 2 of Plaintiff's Complaint (Doc. 1; Doc. 10).

## Background

In his Complaint, Plaintiff alleges the following: On September 6, 2017, Plaintiff was stabbed in his arm by other inmates in the prison yard at Menard (Doc. 1; Doc. 10). Before the attack, Plaintiff expressed concerns for his physical safety to Jones, Rees, Trokey, and Young, but they laughed at Plaintiff and did not permit him to leave the yard (Doc. 10, p. 2). Various officers, including Jones, watched as Plaintiff was stabbed (*Id.*). Following the attack, and despite explaining to Jones, Schoenbeck, and Westerman, that he was injured, Schoenbeck (as instructed by Jones) handcuffed Plaintiff extra tight,

causing him additional pain (*Id.*).  Plaintiff was later treated by McGhee, who cleaned and bandaged Plaintiff's wound, although it continued to bleed through the bandage (*Id.*) Plaintiff did not see a doctor and was not given medicine for his pain (*Id.*).  Plaintiff was told by Wooley that it was not her job to provide Plaintiff with medical treatment (*Id.*). Throughout the week following his injury, Plaintiff asked Wooley, Gardiner, Gee, McCaleb, Caron, and Oliver for medical attention, but was denied each time (*Id.*).

On September 15, 2017, Plaintiff transferred to Pontiac Correctional Center ("Pontiac") (Doc. 55-1).  While at Pontiac, Plaintiff drafted at least two grievances relevant to this matter (Doc. 1, pp. 24-33; Doc. 55-4; Doc. 55-5; Doc. 55-9; Doc. 58, pp. 16-17, 20-24). The Grievances are dated September 29, 2017 and October 8, 2017 (*Id.*).

    **A.**    **9-29-17 Grievance**

Plaintiff's 9-29-17 Grievance, in relevant part, provides: On September 6, 2017, at Menard, Plaintiff was stabbed in his arm by an inmate while "Gym L.T. (John Doe and 3 C/O's (All John Does)" watched  (Doc. 1, pp. 24-25).  Plaintiff was placed in segregation after the attack and stayed in segregation from September 7, 2017 through September 15, 2017 (Doc. 1, p. 25).  Plaintiff requested medical treatment from McCaleb, Caron, Gardiner, Jane Doe Mental Health worker, along with every correctional officer and Jane Doe nurse working in the "2 Gallery/In Seg" on September 7, 2017 but was denied each time (*Id.*).  Plaintiff did not receive any medical treatment for his arm (*Id.*).  Plaintiff requested "further action at a later day" and to have the evidence related to his injuries preserved (*Id.*).

3

The 9-29-17 Grievance was not reviewed by any official at Pontiac.[1] Plaintiff did, however, mail the 9-29-17 Grievance directly to the Administrative Review Board ("ARB") while at Pontiac (Doc. 1, p. 24; Doc. 55, p. 2). The ARB received the 9-29-17 grievance on October 10, 2017 and returned the grievance to Plaintiff on October 16, 2017 stating that Plaintiff's medical issues "are to be reviewed at your current facility prior to review by the Administrative Review Board." (Doc. 1, pp. 24, 26; Doc. 55, p. 2; Doc. 55-4, p. 1). On March 15, 2018, Plaintiff transferred to Stateville Correctional Center ("Stateville") (Doc. 55-1). While at Stateville, Plaintiff submitted the 9-29-17 Grievance for review (Doc. 1 p. 24; Doc. 55-5, p. 2). Stateville received the 9-29-17 Grievance on June 1, 2018 (*Id.*). On December 3, 2018, the grievance was denied as moot because Plaintiff had received adequate medical treatment for his arm and could request further treatment as needed (Doc. 1, pp. 24, 27; Doc. 55-5, pp. 1-2). The correctional officer also stated that Stateville could not address any of the specific issues related to preservation of evidence because the incident occurred at Menard (*Id.*). Plaintiff did not appeal this decision to the ARB (Doc. 55-3; Doc. 58).

B.     **10-8-17 Grievance**

In Plaintiff's 10-8-17 Grievance, he restates the narrative in the 9-28-17 Grievance, and further complained of John Does 8-10's failure to protect Plaintiff by not allowing Plaintiff to leave the yard and then by failing to help Plaintiff while he was attacked (Doc.

---

[1] The records attached to Defendant's Motion do not show that Pontiac received the 9-29-17 Grievance, and Plaintiff does not dispute this fact; instead Plaintiff argues that he was prevented from submitting the 9-29-17 Grievance while at Pontiac because unidentified prison officials refused him access to the grievance lockbox (Doc. 55-10; Doc. 58, p. 9).

4

1, pp. 28-32; Doc. 55-9, pp. 6-8, 14-15). Plaintiff further grieved the use of excessive force by Westerman following the attack, which Plaintiff claimed was done at the instruction of Jones and Schoenbeck so Plaintiff "could learn his lesson" and to further aggravate his injury (*Id.*). Plaintiff further described not receiving medical care at Menard, despite requesting medical attention from Westerman, Johns, Schoenbeck, McGhee, Wooley, McCaleb, Caron, Jane Doe mental health worker, Garner, Gee, and Wooley (*Id.*).

Plaintiff maintains that he submitted the 10-8-17 Grievance for review while at Pontiac by mailing it to his counselor and to the ARB (Doc. 58, p. 11; 58-1, pp. 2-3). In support, Plaintiff provides a statement and his legal mail card showing multiple letters sent to the ARB in 2017 (Doc. 58-1, pp. 2-3, 9). Defendants disagree, arguing that the ARB did not receive the 10-8-17 Grievance in 2017 because it does not appear in Plaintiff's Cumulative Counseling Summary or ARB records (Doc. 55-2). However, it is undisputed, that Plaintiff submitted the 10-8-17 Grievance for review on June 1, 2018, after transferring to Stateville (Doc. 1, p. 28; Doc. 55-9, p. 14). Stateville denied the 10-8-17 grievance as untimely on August 7, 2018[2] (Doc. 1, p. 33; Doc. 55-9, p. 5).

On October 20, 2018, Plaintiff mailed a letter to then Illinois Governor Bruce Rauner, complaining that Stateville wrongly denied his 10-8-17 Grievance as untimely Doc. 1, pp. 35-38; Doc. 1-1). Plaintiff asked the Governor to investigate why the ARB and Pontiac failed to respond to 10-8-17 Grievance in October 2017 (*Id.*). Plaintiff also sent a new grievance, dated October 20, 2018, to the Governor (*Id.*) The 10-20-18 Grievance

---

[2] The returned grievance incorrectly states that the grievance was returned on August 7, 2017. (Doc. 1, p. 33; Doc. 55-9, p. 5).

5

alleged that the ARB failed to timely respond to Plaintiff's 10-8-17 Grievance, even though the 10-8-17 Grievance raised issues related to staff conduct that Plaintiff was required to submit directly to the ARB for review (Doc. 1-1); *see* 20 Ill. Admin. Code § 504.870(a)(4) ("Offenders shall submit grievances directly to the Administrative Review Board when grieving: 4) other issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues.").

The ARB received a copy of Plaintiff's October 20, 2018 letter on November 15, 2018 (Doc. 55-9). The ARB denied the new 10-20-18 grievance finding it untimely and improperly submitted (Doc. 55-9, p. 2). The ARB also informed Plaintiff that it had never received his 10-8-17 Grievance:

> ARB has received grievances from Offender dated 9/29/17, 10/12/17, 10/15/17 and 10/19/17 and all have been responded to by the ARB. The grievance in question was sent in by an outside source (Governor's Office). Offender failed to follow DR504F in filing grievances. The grievance dated 10/8/17 was never received by the ARB and is now 60 days past the time frame for a review.

(*Id.*).

## Legal Standard

Defendants seek summary judgment pursuant to Fed. R. Civ. P. 56, arguing that Plaintiff failed to exhaust his administrative remedies before filing this action. Summary judgment is "proper only if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). A genuine issue of material fact exists if the evidence is such that

6

a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Defendants bear the initial burden of demonstrating a lack of genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The Court considers the facts in a light most favorable to the non-movant, here Plaintiff. *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 588-90 (7th Cir. 2015); *see Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). A hearing is not necessary, however, when exhaustion, or the lack of exhaustion, is apparent. *Wagoner*, 778 F.3d at 588; *see also Doss v. Gilkey*, 649 F.Supp.2d 905, 912 (S.D. Ill. 2009) (no *Pavey* hearing is required when purely legal issues and undisputed facts control the administrative remedies issue).

Lawsuits filed by inmates are governed by the Prison Litigation Reform Act ("PLRA"). The PLRA provides, in relevant part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). An inmate must take all the steps required by the prison's grievance system to properly exhaust his administrative remedies. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). However, an inmate is only required to exhaust those administrative remedies that are available to him. 42 U.S.C. § 1997e(a); *Reid*, 962 F.3d at 329. Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance. *See e.g. Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). Further, an inmate is not required to continue their grievance efforts once it is determined that they have received all requested relief and no further remedies are available. *Thornton v. Snyder*, 428 F.3d 690, 694-97 (7th Cir. 2005).

As an inmate in the IDOC, Plaintiff was required to follow the three-step grievance process outlined in the Illinois Administrative Code. *See* 20 Ill. Admin. Code § 504.800, *et seq* (detailing grievance procedure). In short, if a prisoner has a grievance, he must first seek the assistance of an inmate counselor. *Id.* at § 504.810. If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who submits a recommendation to the chief administrative officer (usually the warden). *Id.* at §§ 504.810; 504.830. If the warden denies the prisoner's grievance, the prisoner has 30 days in which to appeal the decision to the IDOC Director by sending the grievance to the ARB. *Id.* at § 504.850. The Illinois Administrative Code also requires certain grievances to be filed directly with the ARB. *See* 20 Ill. Admin. Code § 504.870(a)(4) ("Offenders shall submit grievances directly

to the Administrative Review Board when grieving: 4) other issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues.").

## Discussion

Defendants argue that Plaintiff failed to exhaust his available administrative remedies by improperly grieving the claims relevant to this dispute. Specifically, as to the 9-29-17 Grievance, Defendants claim that the grievance fails to raise any allegations as to Plaintiff's Count 1 (failure to protect) and Count 2 (excessive force); and even if it does provide notice of Count 3 (inadequate medical care), it lacks sufficient specificity concerning the identities of the defendants in violation of 20 Ill. Admin Code § 504.810(c) (Doc. 55, p. 9). Section 504.810(c) requires a grievant to provide "as much descriptive information about the individual as possible" in the grievance. Defendants also argue that by not appealing the denial of the 9-29-17 Grievance in December 2018, Plaintiff failed to adequately complete the administrative remedy process (*Id.*).

As for the 10-8-17 Grievance, Defendants argue that Plaintiff never submitted the grievance for review while at Pontiac, and therefore, it was rightly determined to be untimely when Plaintiff later submitted it for review in June 2018, and then indirectly to the ARB in October 2018 (*Id.* at pp. 11-12). In support, Defendants submit many documents to show that Plaintiff did not submit the 10-8-17 Grievance to the ARB in October 2017, including Plaintiff's Cumulative Counselling Summary, ARB records, and the date stamps on Plaintiff's 10-8-17 Grievance and the October 2018 Governor letter (*Id.*). Plaintiff responds, stating that he attempted to submit the 10-8-17 Grievance in

9

October 2017 multiple times, but that he was thwarted by various correctional officers at Pontiac who refused to bring him the grievance box so Plaintiff could submit the grievance (Doc. 58, pp. 11-12; Doc. 58-1, pp. 2-3). Plaintiff also maintains that he mailed copies of the 10-8-17 Grievance to both the ARB and his Pontiac counselor, but received no response from either (*Id.*). Accordingly, Plaintiff claims that he was unable to comply with the available administrative remedies through no fault of his own.

At present there are factual disputes concerning the 10-8-17 Grievance, and the alleged exhaustion of Plaintiff's Counts 1 and 2 as presented in both the 9-29-17 Grievance and 10-8-17 Grievance. These issues require an evidentiary hearing. *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Accordingly, the Court will not reach a decision as to those issues at this time. However, there is no factual dispute concerning Count 3 of Plaintiff's Complaint as presented by Plaintiff in his 9-29-17 Grievance. Therefore, the Court can resolve Defendants' Motion as to Count 3 without a hearing. *Wagoner*, 778 F.3d at 588; *see also Doss v. Gilkey*, 649 F.Supp.2d 905, 912 (S.D. Ill. 2009) (no *Pavey* hearing is required when purely legal issues and undisputed facts control the administrative remedies issue).

The 9-29-17 Grievance clearly raises issues related to Plaintiff's medical treatment at Menard following the incident on September 6, 2017, including that he requested medical treatment from every correctional officer and nurse working in his segregation unit on September 7, 2017 (Doc. 1, p. 25). While Defendants argue that the 9-29-17 Grievance lacks specificity concerning the identities of the Defendants in violation of 20 Ill. Admin Code § 504.810(c), the Court disagrees. A grievant is not required to know the name of the prison employee whom he's complaining about, and often will not know the

employee's name before filing a grievance. *See Roberts v. Neal*, 745 F.3d 232, 235-36 (7th Cir. 2014). The Court finds that Plaintiff's description of the Defendants' specific titles (correctional officers and nurses), location (the segregation unit Plaintiff was housed), and date (September 7, 2017) provided adequate specificity to identify the persons at subject in Plaintiff's 9-29-17 Grievance so to survive summary judgment. Therefore, Defendants cannot meet their burden to show that the 9-29-17 Grievance was deficient on that basis alone.

Furthermore, Plaintiff's failure to appeal the ultimate denial of his 9-29-17 Grievance to the ARB does not render his 9-29-17 Grievance unexhausted (at least as it relates to his allegations of deficient medical treatment in Count 3 of his Complaint), because there was no further relief that could be provided to Plaintiff in the grievance process once the grievance was denied as moot. Although Plaintiff did not submit the 9-29-17 Grievance to Stateville for review until June 2018, it is undisputed that the 9-29-17 Grievance was decided on the merits once received. Specifically, the medical issues grieved by Plaintiff in the 9-29-17 Grievance were found to have been provided, and to have been adequate; and that Plaintiff could request additional medical treatment as needed. The 9-29-17 Grievance was therefore denied as moot, opposed to as untimely, and the Court will not second-guess that decision. *See Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) ("[W]hen a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action."); *see also Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (A "procedural shortcoming like failing to follow the prison's

11

time deadlines amounts to a failure to exhaust only if prion administrators explicitly relied on that shortcoming."); *in accord Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

Moreover, in denying the 9-29-17 as moot, Stateville determined that Plaintiff had received the available medical care he had requested in the grievance. Accordingly, there was no further available remedy for Plaintiff to pursue from the ARB concerning his past medical treatment. *Thornton v. Snyder*, 428 F.3d 690, 695 (7th Cir. 2005) (once an inmate receives all remedies 'available' he need not continue to exhaust administrative remedies). In *Thornton*, the Seventh Circuit provided the following example which is analogous here:

> It is possible to imagine cases in which the harm is done and no further administrative action could supply *any* "remedy." ... Suppose the prisoner breaks his leg and claims delay in setting the bone is cruel and unusual punishment. If the injury has healed by the time suit begins, nothing other than damages could be a "remedy," and if the administrative process cannot provide compensation then there is no administrative remedy to exhaust.

*Id*.

Likewise, here, Plaintiff is claiming insufficient medical treatment for his arm injury. Although, Stateville determined that Plaintiff eventually received the requested medical treatment, this does not prevent Plaintiff from arguing now that the care he received directly following his injury in September 2017 was deficient, even if no further treatment was presently needed in 2018 when Stateville denied the grievance as moot. As such, there was no further relief that could be provided to Plaintiff in the grievance process as it related to Count 3, and Plaintiff was not required to appeal the denial. Accordingly, Defendants cannot meet their burden to show that Plaintiff failed to exhaust

his administrative remedies as to Count 3 of Plaintiff's Complaint, and Defendants' Motion as it relates to Count 3 of Plaintiff's Complaint will be denied.

## Disposition

For the above stated reasons, Defendant's Motion for Summary Judgment (Doc. 54) as it relates to Count 3 of Plaintiff's Complaint is **DENIED**. The Court takes the remaining exhaustion arguments related to Counts 1 and 2 of Plaintiff's Complaint under further advisement. A motion hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) will be set by further Court Order. The Parties are advised that the hearing will be limited solely to the issue of exhaustion as to Counts 1 and 2 of Plaintiff's Complaint (Doc. 1, Doc. 10).

**SO ORDERED.**

Dated: March 17, 2021

_____
DAVID W. DUGAN
United States District Judge