IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CALEB CHARLESTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 19-cv-764-DWD |
| | ) |
| ALEX JONES, | ) |
| JOSHUA SCHOENBECK, | ) |
| PAMELA WESTERMAN, | ) |
| SARAH WOOLEY, | ) |
| JOHN MCCALEB, | ) |
| CHASE CARON, | ) |
| JEFFREY GARDINER, | ) |
| SHAUN GEE, | ) |
| HEATHER MCGHEE, | ) |
| PATRICK TROKEY, | ) |
| CALE YOUNG, | ) |
| JORDAN REES, and | ) |
| TANGELA OLIVER, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**DUGAN, District Judge:**

Plaintiff Caleb Charleston, an inmate of the Illinois Department of Corrections ("IDOC"), brings this 42 U.S.C. § 1983 action against Defendants following injuries Plaintiff sustained at Menard Correctional Center ("Menard") in 2017. On September 15, 2020, Defendants Caron, Gardiner, Gee, Jones, McCaleb, McGhee, Rees, Schoenbeck, Trokey, Westerman, Wooley, and Young filed their Motion for Summary Judgment (Doc. 54) on the issue of Plaintiff's failure to exhaust administrative remedies. Defendant Oliver did not participate in the Motion. Defendants filed a memorandum in support (Doc. 55) and Plaintiff timely opposed the Motion (Doc. 58).

1

As narrowed by the Court's threshold order (Doc. 10), Plaintiff proceeds on the following counts:

**Count 1:** Eighth Amendment failure to protect claim against Jones and correction officers Trokey, Young, and Rees.

**Count 2:** Eighth Amendment excessive force claim against Jones, Schoenbeck, and Westerman for handcuffing plaintiff after he received injuries to his arm.

**Count 3:** Eighth Amendment deliberate indifference to a serious medical need claim against Jones, Westerman, Schoenbeck, Oliver, Wooley, McCaleb, Caron, Gardiner, Gee and McGhee for failing to provide plaintiff with adequate medical treatment following his attack.

On March 17, 2021, the Court denied Defendants' Motion, in part, only as to Count 3 of Plaintiff's Complaint. (Doc. 71). On April 15, 2021, a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was held on the exhaustion arguments related to Counts 1 and 2 of Plaintiff's Complaint. Following arguments, and for the reasons delineated below, Defendants' Motion for Summary Judgment directed at Count 1 and Count 2 of Plaintiff's Complaint will be granted.

## Background

In his complaint, Plaintiff presents the following factual allegations related to his claims for failure to protect (Count 1) and excessive force (Count 2): On September 6, 2017, Plaintiff was stabbed in his arm by other inmates in the prison yard at Menard (Doc. 1; Doc. 10). Before the attack, Plaintiff expressed concerns for his physical safety to Jones, Rees, Trokey, and Young, but they laughed at Plaintiff and did not permit him to leave the yard (Doc. 10, p. 2). Various officers, including Jones, watched as Plaintiff was stabbed (*Id.*). Following the attack, and despite explaining to Jones, Schoenbeck, and

2

Westerman that he was injured, Schoenbeck (as instructed by Jones) handcuffed Plaintiff extra tight, causing him additional pain (*Id.*). On September 15, 2017, Plaintiff transferred to Pontiac Correctional Center ("Pontiac") (Doc. 55-1). While at Pontiac, Plaintiff drafted at least two grievances relevant to this matter (Doc. 1, pp. 24-33; Doc. 55-4; Doc. 55-5; Doc. 55-9; Doc. 58, pp. 16-17, 20-24). The Grievances are dated September 29, 2017 and October 8, 2017 (*Id.*).

### A.    9-29-17 Grievance

Plaintiff's 9-29-17 Grievance, in relevant part, provides: On September 6, 2017, at Menard, Plaintiff was stabbed in his arm by an inmate while "Gym L.T. (John Doe and 3 C/O's (All John Does)" watched (Doc. 1, pp. 24-25). Plaintiff requested "further action at a later day" and to have the evidence related to his injuries preserved (*Id.*). The 9-29-17 Grievance was not reviewed by any official at Pontiac.[1] Plaintiff did, however, mail the 9-29-17 Grievance directly to the Administrative Review Board ("ARB") while at Pontiac (Doc. 1, p. 24; Doc. 55, p. 2). The ARB received the 9-29-17 grievance on October 10, 2017 and returned the grievance to Plaintiff on October 16, 2017 stating that Plaintiff's medical issues "are to be reviewed at your current facility prior to review by the Administrative Review Board." (Doc. 1, pp. 24, 26; Doc. 55, p. 2; Doc. 55-4, p. 1).

On March 15, 2018, Plaintiff transferred to Stateville Correctional Center ("Stateville") (Doc. 55-1). While at Stateville, Plaintiff submitted the 9-29-17 Grievance

---

[1] The records attached to Defendant's Motion do not show that Pontiac received the 9-29-17 Grievance, and Plaintiff does not dispute this fact; instead Plaintiff argues that he was prevented from submitting the 9-29-17 Grievance while at Pontiac because unidentified prison officials refused him access to the grievance lockbox (Doc. 55-10; Doc. 58, p. 9).

for review (Doc. 1 p. 24; Doc. 55-5, p. 2). Stateville received the 9-29-17 Grievance on June 1, 2018 (*Id.*). On December 3, 2018, the grievance was denied as moot because Plaintiff had received adequate medical treatment for his arm and could request further treatment as needed (Doc. 1, pp. 24, 27; Doc. 55-5, pp. 1-2). The correctional officer also stated that Stateville could not address any of the specific issues related to preservation of evidence because the incident occurred at Menard (*Id.*). Plaintiff did not appeal this decision to the ARB (Doc. 55-3; Doc. 58).

### B.     10-8-17 Grievance

In Plaintiff's 10-8-17 Grievance, he restates the narrative in the 9-28-17 Grievance, and further complained of John Does 8-10's failure to protect Plaintiff by not allowing Plaintiff to leave the yard and then by failing to help Plaintiff while he was attacked (Doc. 1, pp. 28-32; Doc. 55-9, pp. 6-8, 14-15). Plaintiff further grieved the use of excessive force by Westerman following the attack, which Plaintiff claimed was done at the instruction of Jones and Schoenbeck so Plaintiff "could learn his lesson" and to further aggravate his injury (*Id.*). Plaintiff maintains that he submitted the 10-8-17 Grievance for review while at Pontiac by mailing it to his counselor and to the ARB (Doc. 58, p. 11; 58-1, pp. 2-3). In support, Plaintiff provides a statement and his legal mail card showing multiple letters sent to the ARB in 2017 (Doc. 58-1, pp. 2-3, 9). Defendants disagree, arguing that the ARB did not receive the 10-8-17 Grievance in 2017 because it does not appear in Plaintiff's Cumulative Counseling Summary or ARB records (Doc. 55-2). Plaintiff submitted the 10-8-17 Grievance for review on June 1, 2018, after transferring to Stateville (Doc. 1, p. 28;

4

Doc. 55-9, p. 14).  Stateville denied the 10-8-17 grievance as untimely on August 7, 2018[2] (Doc. 1, p. 33; Doc. 55-9, p. 5).

On October 20, 2018, Plaintiff mailed a letter to then Illinois Governor Bruce Rauner complaining that Stateville wrongly denied his 10-8-17 Grievance as untimely Doc. 1, pp. 35-38; Doc. 1-1).  Plaintiff asked the Governor to investigate why the ARB and Pontiac failed to respond to 10-8-17 Grievance in October 2017 (*Id.*).  Plaintiff also sent the Governor a new grievance, dated October 20, 2018, where Plaintiff alleged that the ARB failed to timely respond to Plaintiff's 10-8-17 Grievance, even though the 10-8-17 Grievance raised issues related to staff conduct that Plaintiff was required to submit directly to the ARB for review (Doc. 1, pp. 35-38; Doc. 1-1); *see* 20 Ill. Admin. Code § 504.870(a)(4) (Offenders shall submit grievances directly to the ARB when grieving issues pertaining to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues). The ARB received a copy of Plaintiff's October 20, 2018 letter on November 15, 2018 (Doc. 55-9) and denied the new 10-20-18 grievance finding it untimely and improperly submitted (Doc. 55-9, p. 2).  The ARB also informed Plaintiff that it had never received his 10-8-17 Grievance:

> ARB has received grievances from Offender dated 9/29/17, 10/12/17, 10/15/17 and 10/19/17 and all have been responded to by the ARB. The grievance in question was sent in by an outside source (Governor's Office). Offender failed to follow DR504F in filing grievances. The grievance dated 10/8/17 was never received by the ARB and is now 60 days past the time frame for a review.

(*Id.*).

---

[2] The returned grievance incorrectly states that the grievance was returned on August 7, 2017. (Doc. 1, p. 33; Doc. 55-9, p. 5).

## **Legal Standard**

Defendants seek summary judgment pursuant to Fed. R. Civ. P. 56, arguing that Plaintiff failed to exhaust his administrative remedies before filing this action. Summary judgment is "proper only if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Defendants bear the initial burden of demonstrating a lack of genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The Court considers the facts in a light most favorable to the non-movant, here Plaintiff. *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 588-90 (7th Cir. 2015); *see Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Lawsuits filed by inmates are governed by the Prison Litigation Reform Act ("PLRA"). The PLRA provides, in relevant part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or correctional facility until such administrative

6

remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement.  *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).  An inmate must take all the steps required by the prison's grievance system to properly exhaust his administrative remedies.  *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).  However, an inmate is only required to exhaust those administrative remedies that are available to him.  42 U.S.C. § 1997e(a); *Reid*, 962 F.3d at 329.  Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance.  *See e.g. Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

As an inmate in the IDOC, Plaintiff was required to follow the three-step grievance process outlined in the Illinois Administrative Code.  *See* 20 Ill. Admin. Code § 504.800, *et seq.* (detailing grievance procedure).  In short, if a prisoner has a grievance, he must first seek the assistance of an inmate counselor.  *Id.* at § 504.810.  If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who submits a recommendation to the chief administrative officer (usually the warden).  *Id.* at §§ 504.810; 504.830.  If the warden denies the prisoner's grievance, the prisoner has 30 days in which to appeal the decision to the IDOC Director by sending the grievance to the ARB.  *Id.* at § 504.850.  The Illinois Administrative Code also requires certain grievances to be filed directly with the ARB.  *See* 20 Ill. Admin. Code § 504.870(a)(4) ("Offenders shall submit grievances directly

7

to the Administrative Review Board when grieving: 4) other issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues.").

## Discussion

Defendants argue that Plaintiff failed to exhaust his available administrative remedies by improperly grieving the claims relevant to this dispute. Specifically, as to the 9-29-17 Grievance, Defendants claim that the grievance fails to raise any allegations as to Plaintiff's Count 2 (excessive force) and is deficient to exhaust Count 1 (failure to protect) (Doc. 55, p. 9). Defendants further argue that Plaintiff failed to appeal the denial of this grievance after it was denied as moot in December 2018 while he was at Stateville. At the hearing on April 15, 2021, Plaintiff admitted that this grievance did not allege any factual issues related to his excessive force claim, but maintains that the following sentence in the grievance adequately raises his failure to protect claim: "Gym L.T. (John Doe and 3 C/O's (All John Does)" watched the attack (Doc. 1, pp. 24-25). Plaintiff further argues that he tried to appeal the decision denying the 9-29-17 Grievance to the ARB, but ultimately had issues with the mail while at Stateville.

To succeed on a failure-to-protect claim, an inmate must first demonstrate, objectively, that he is "incarcerated under conditions posing a substantial risk of serious harm[,]" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and a beating of one inmate by another "clearly constitutes serious harm." *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). Second, he must show that prison officials acted with deliberate indifference to

that risk, a subjective inquiry into a prison official's state of mind. *Farmer*, 511 U.S. at 838–39.

"A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prisoner must demonstrate that prison officials were aware of a specific, impending and substantial threat to his safety, often "by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (quoting *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991)); *see also Sinn v. Lemmon*, 911 F.3d 412, 420-21 (7th Cir. 2018) (Complaints are not the only method plaintiffs can use to show subjective intent; instead "what at matters is the relevant defendant's subjective awareness, which includes the inmate's complaints along with any other information the defendant may have.").

Plaintiff's 9-29-17 Grievance does not adequately present facts that would indicate Defendants Trokey, Young, and Rees knew of a specific threat to his safety, whether by his own complaints or some other source of subjective knowledge. While the 9-29-17 Grievance does allege that Defendants Trokey, Young, and Rees watched Plaintiff's attack, there are no factual allegations in this grievance which would suggest that Defendants Trokey, Young, and Rees were aware of the pending attack, or any other threat to Plaintiff's safety, prior to the attack. Accordingly, the 9-29-17 does not factually allege Plaintiff's failure to protect claim so to alert Defendants of this claim and exhaust

9

his administrative remedies. Therefore, the 9-29-17 Grievance did not exhaust Plaintiff's claims as to Counts 1 and 2 of his Complaint.

The allegations in the 10-8-17 Grievance sufficiently support both Counts 1 and 2 of Plaintiff's Complaint. However, Defendants maintain that these claims were not adequately exhausted because Plaintiff never submitted this grievance for review while at Pontiac in October 2017, and therefore, it was rightly determined to be untimely when Plaintiff later submitted it for review in June 2018, and then indirectly to the ARB in October 2018 (*Id.* at pp. 11-12). In support, Defendants rely on various documents from the ARB and IDOC that do not show that a 10-8-17 Grievance was filed by Plaintiff in October 2017. Plaintiff responds, stating that he attempted to submit the 10-8-17 Grievance in October 2017 multiple times, but that he was thwarted by various correctional officers at Pontiac who refused to bring him the grievance box so Plaintiff could submit the grievance (Doc. 58, pp. 11-12; Doc. 58-1, pp. 2-3). Plaintiff also maintains that he mailed copies of the 10-8-17 Grievance to both the ARB and his Pontiac counselor, but received no response from either (*Id.*). Plaintiff concludes that he was unable to comply with the available administrative remedies through no fault of his own.

At the April 15, 2021 hearing, Plaintiff testified that he has been incarcerated with the IDOC for 12 years and is familiar with the IDOC grievance process. Plaintiff further testified that he placed two copies of the 10-8-17 Grievance in the small opening of his cell, intending for the grievance to be mailed both to his counselor and the ARB. Plaintiff then relies on his legal mail card (Doc. 58-1, p. 9) (which shows that outgoing legal mail was sent to the ARB on October 11, 2017) to conclude that he did mail the 10-8-17

10

Grievance to the ARB on October 11, 2017 (*Id.*). Plaintiff also referenced correspondence he exchanged with his Pontiac Counselor in December 2017, where Plaintiff inquired about the status of the 10-8-17 Grievance from the ARB, (Doc. 58-1, p. 11).

Plaintiff testified credibly as to his familiarity with the IDOC grievance process, and the Court finds that Plaintiff had knowledge and experience with IDOC's administrative procedures. Indeed, Plaintiff has successfully submitted a multitude of grievances both to his counselor and by mail to the ARB, many of which were submitted and resolved in October 2017. While Plaintiff's legal mail card indicates that something was mailed to the ARB on October 11, 2017, Plaintiff's testimony regarding the legal mail card is simply too speculative to support the conclusion that the 10-8-17 Grievance was the specific document mailed out on October 11, 2017. At best, Plaintiff's testimony suggests that Plaintiff was unsure of what was mailed on October 11, 2017. This speculation, in combination with Plaintiff's knowledge and experience with the grievance system, and Plaintiff's successful efforts in mailing and receiving responses to a multitude of other grievances filed in October 2017, show that he did not properly submit the 10-8-17 grievance for review in accordance with IDOC's administrative procedures. No reasonable jury could find otherwise. Accordingly, the 10-8-17 Grievance cannot serve to exhaust Plaintiff's claims for excessive force or failure to protect.

As no other record or alleged grievance timely or sufficiently raised the issues related to Counts 1 and 2 of Plaintiff's Complaint for administrative review, the Court concludes that these claims were not sufficiently exhausted. Accordingly, summary

judgment is proper on Counts 1 and 2 of Plaintiff's Complaint for Plaintiff's failure to exhaust administrative remedies.

## Disposition

For the above stated reasons, Defendant's Motion for Summary Judgment (Doc. 54) as it relates to Counts 1 and 2 of Plaintiff's Complaint is **GRANTED**. Counts 1 and 2 of Plaintiff's Complaint are **DISMISSED, without prejudice**. Count 3 of Plaintiff's Complaint survives in accordance with the Court's Order at Doc. 71. However, as Count 3 is not directed towards Defendants Trokey, Young, and Rees, the Clerk of the Court is **DIRECTED** to terminate Defendants Trokey, Young, and Rees from the docket.

Discovery in this matter remains stayed pursuant to the initial scheduling order at Doc. 31, until such time as all exhaustion issues are resolved. After resolution of all exhaustion issues, the Court will enter a further discovery and scheduling order.

**SO ORDERED.**

Dated: April 16, 2021

_____
DAVID W. DUGAN
United States District Judge